JOHN R. VAN HOUTEN, executor &c., appellant,

*v.*

GEORGE POST, respondent.

1. Where a parent bequeaths a legacy to a child it is understood to be a portion, and if, after the execution of the will, the parent gives a sum of money to the child equal in amount to the legacy, if it be *ejusdem generis*, it will be an ademption of the legacy, if so intended.

2. The advancement of a less sum, with intent to go on the legacy, will be an ademption *pro tanto.*

3. Evidence of parol declarations of testator of the fact of giving the money is not admissible, but such fact must be proved by other testimony.

4. Charges in books, made by parent against child, to show advancements, admitted in evidence; such testimony having been so long received by the courts of this state.

5. The fact of the money having passed from the parent to the child being proved, it will be presumed to be in satisfaction of the legacy; but the presumption will be slight, and evidence of parol declarations of testator that he did not so intend, and also his declarations in reply thereto that he did so intend, are admissible.

6. Whether intended to be a gift, independent of the legacy, or the payment of a debt, or a portion in ademption of the legacy, is to be decided by the circumstances and facts proved in each case.

On appeal from a decree of the ordinary, reported in *Van Houten* v. *Post, 5 Stew. Eq. 709.*

*Mr. J. Hopper* and *Mr. J. D. Bedle,* for appellant.

*Mr. T. D. Hoxsey,* for respondent.

The opinion of the court was delivered by

PARKER, J.

Rachael Van Houten executed her last will on the 20th day of October, A. D. 1857, and died in the year 1863.

The executors named in her will were her son-in-law John R. Van Houten, and her son George Post, the litigants in this suit.

On April 27th, 1866, an account was filed for settlement in the orphans court of the county of Passaic. It purports to be the account of both executors, but was filed and sworn to only by John R. Van Houten. George Post, the other executor, filed exceptions to the account. Van Houten prayed allowance for the sum of $5,000, paid by him to his wife Catharine Van Houten for a legacy of that amount bequeathed to her by the will of her mother.

To this claim for allowance by Van Houten, Post, who is interested in the residue, excepted, on the ground that after the execution of the will the testatrix advanced the amount of said legacy to her daughter Catharine with the intention of satisfying the same, and that thus the legacy was adeemed. The orphans court sustained this view and refused to allow Van Houten the credit he claimed. From the decree of the orphans court, Van Houten appealed to the prerogative court, and the ordinary affirmed the same, and ordered Van Houten to pay the costs of appeal out of his own funds. From the decree made by the ordinary Van Houten appealed to this court.

The question to be decided is, whether the $5,000 legacy bequeathed to Catharine by the will of her mother was adeemed. This bequest is at the close of the eleventh item of the will, and is ordered to be paid out of the proceeds of certain land which the executors were ordered to sell.

Where a parent bequeaths a legacy to a child, it is understood to be a portion, and if, after the execution of the will, the parent gives a sum of money to the child equal in amount to the legacy, if it be *ejusdem generis*, it will be an ademption of the legacy, if so intended. *2 Story's Eq. Jur. § 1111 et seq., and notes*

*thereto; 2 Wms. Exrs. (ed. 1877) 1439; 2 Redf. on Wills 537, and notes.*

And if the advancement of a less sum, with intent to go on the legacy, be proved, it will be an ademption *pro tanto. 2 Redf. on Wills 538.*

To prove the ademption of a legacy it must appear, first, that the legatee received the money from the testator after the execution of the will; and secondly, that such money was advanced as a portion, with the intention of satisfying the legacy.

There is some contradiction in the authorities as to the admissibility of the parol declarations of the testator, after the execution of the will, upon the fact of the passing over of money to the child, and also as to the intent, especially where such declarations are not made contemporaneously with the act. After careful examination of the cases, the following are deduced and stated as rules upon this much-vexed question. To prove the mere fact of the passing over of the money from the parent to the child, evidence of the parol declarations of the testator is not admissible, but such independent fact must be proved by other testimony. *Fawkner v. Watts, 1 Atk. 407 ; Batton v. Allen, 1 Hal. Ch. 99 ; 2 Wms. Exrs. 1444.*

To admit evidence of such declarations would be to revoke the provisions of a will by parol. There is no reason for such a departure from principle. Should a parent make an advancement to satisfy a legacy to a child, and there be no evidence of the fact of giving the money to the legatee, he can easily manifest his intention by executing a codicil.

Charges in books made by parent against child have been so long admitted in the courts of this state, as tending to show advancements, that the rule in reference to these cannot now be well changed, but such evidence as to the fact of passing over the money is of a low grade.

The fact of the money having passed from the parent to the child, after the execution of the will, being proved, the next question is as to the admissibility of evidence to show the intention.

Was it a gift independent of the provisions of the will, or a

loan, or payment of an obligation; or was it intended as a portion in satisfaction of the legacy?

The current of authority holds that it will be presumed to be a portion, but that this presumption is slight, and to overcome it evidence of parol declarations of the testator is admissible to show that he did not intend the money as a portion in satisfaction of the legacy, and, in reply thereto, his parol declarations that he did so intend, may be shown, to ascertain if the presumption be well or ill founded. *Rosewell* v. *Bennet, 3 Atk. 77; Kirk* v. *Eddowes, 3 Hare 509.*

The presumption arising from the passing of the money from the parent to the child is so slight and so easily overcome, that the rule may be stated to be that whether the money was intended to be a gift independent of the legacy, or the payment of a debt, or a portion in ademption of the legacy, must be decided by the circumstances and facts proved in each case.

Declarations of a testator as to the object, when admitted in evidence to overcome or sustain the presumption, in order to adeem a legacy, should not be vague and uncertain, but should be stated with some particularity, so that they could be understood by the witness who heard them. Otherwise they should be entitled to but little weight.

Declarations of the intention, to avail as evidence, should be made by a testator who, at the time of making them, was in the possession of his mental faculties. If the evidence in the case now under consideration proves that, at the time of making the alleged declarations as to intention, Rachael Van Houten, the testatrix, was insane, and not in condition of mind to make a will, such declarations, if admissible, should be disregarded in determining the question whether a provision in so solemn an instrument as a last will should be thereby rendered nugatory.

For two years before the death of Rachael Van Houten she was insane. For some time previous thereto she was, as the witnesses say, out of her mind much of the time. In the early part of a conversation she would appear to be sane, but if the interview was prolonged she would become excited and furious. Especially would this be the case if the conversation related to

her property or her will. At such times, the witnesses say, she had not mind enough to make a will. For the last two years of her life she did not have lucid intervals.

The declarations admitted by the orphans court were made by the testatrix about the time of the interview spoken of by Aaron S. Pennington in his testimony, or subsequent thereto, and to ascertain her state of mind then, it will be necessary to refer to his evidence.

Mr. Pennington says that the testatrix made certain declarations to him, on the 26th day of October, 1859, as to the object of the giving of money which the exceptant claims was advanced by her to her daughter. He swears that he drew the will and superintended its execution in 1857, and that before he called on her, upon the occasion he speaks of, she had lost her mind in great measure, but when her partial derangement commenced he could not say. He further says that he went to see her a number of times, to ascertain if she was in a condition to make an alteration in her will about Adrian Post, in relation to his share, and on those occasions she would get flurried and unable to make a will, as he thought; that the last time he saw her she was very much out of her mind, and told him she was afraid he would do her bodily harm. He further says that on the 26th day of October, 1859, the day she made the declarations to which he testifies, he would not have allowed her to cancel that will under any circumstances, and that he doubted if on that day she had full capacity to make a new will. Some of the other witnesses speak of her declarations about the time of the interview with Mr. Pennington, or subsequent thereto ; but in view of his evidence as to her state of mind, it is not necessary to examine their testimony. Whatever she said under those circumstances (if legal evidence) should have no influence in the determination of this cause.

Leaving out of view all evidence of the declarations of the testatrix, for the reasons already stated, it remains to consider other testimony offered by the exceptant, for the purpose of proving that Catharine received the money from testatrix after

Van Houten v. Post.

the execution of her will, and the object for which it was received by her.

It is said that, in some casual conversations, Catharine admitted that she had received from her mother $5,000, in satisfaction of the legacy. Declarations of a legatee, both as to the fact of the receipt of money and the object for which it was received, are important, and proof of this character should be examined with much care. The only testimony produced by exceptant on this branch of the case worthy of consideration, is that of Aaron S. Pennington. Upon the evidence of this witness the decision of the prerogative court is mainly based.

Mr. Pennington was a gentleman of high character, and would not intentionally make any statement he did not believe to be true; but from all the admitted facts in the cause, and from other parts of Mr. Pennington's testimony, it is evident that he was mistaken in his statement of what Catharine said to him about the advancement of the money.

It must be observed that the examination of Mr. Pennington as a witness, took place nearly nine years after this alleged conversation with Catharine. Mr. Pennington says, in substance, that about two years after the will was executed, he visited the testatrix, having the will with him, and that his recollection is that, as he came down stairs from the room of testatrix, he saw Catharine for a few moments, and told her that her mother said that the $5,000 (referring to the legacy) had been paid her in the house, and that she replied, " That is right." He adds that his impression of what Catharine said depends entirely upon his recollection. Mr. Pennington further says that, when he went to his office, he endorsed what the testatrix had said on the envelope in which the will was enclosed, and he thought he had also endorsed what " Caty " said, but found, when he came to give his testimony, he had not done so.

If Catharine did say what, after the lapse of so many years, Mr. Pennington thinks she said, is it not strange that he did not endorse her reply to him on the envelope at the time he endorsed the declaration of the testatrix? His object must have been to preserve evidence, and, as a lawyer, he must have known that

the admissions of Catharine were of far more importance than the declarations of testatrix, especially when the testatrix, as this witness says, had lost her mind to such an extent as not to be able to make a will upon that day.

If the memory of the witness failed him as to his supposed endorsement of what " Caty " said upon the envelope, did it not also fail him as to what " Caty " did actually say ?  One is in reference to a supposed fact, and the other relates to a hurried conversation, which is much more difficult to retain.

The strongest evidence of inconsistency in the testimony of Mr. Pennington, showing conclusively great infirmity of memory, is the fact that on the 1st day of February, 1865, he wrote a receipt for Catharine Van Houten to sign, acknowledging the receipt from the executor of Rachel Van Houten of $5,000— for the very legacy in question.

Upon this instrument, signed by his wife, John R. Van Houten paid the money which in his account he asked the orphans court to allow him.

Mr. Pennington was not the adviser of the Van Houtens alone, but was the counsel and confidential friend of the whole family of the testatrix.  If Catharine had told him the legacy had been paid her, by advancement of money by her mother after making the will, would he have allowed the executor to pay her again ?  An honorable and just man, such as all admit Aaron S. Pennington was, would not have suffered Catharine to receive a double portion.

But it is said that, at the time he wrote the receipt, Mr. Pennington had forgotten that Catharine had told him she had received the amount of the legacy from her mother.  This is an acknowledgment of his loss of memory.  The writing of the receipt was about three years previous to the examination of Mr. Pennington as a witness, and if he had any memory of the conversation with Catharine, it would certainly then have been more accurate than at the subsequent period of his examination.

The circumstances attending the writing of that receipt were calculated to call attention to what Catharine had said about the legacy, if she ever did say what the witness thinks she did.  He

knew that, by the will which he had drawn and kept in his possession until the death of the testatrix, Catharine's legacy of $5,000 was to be paid to her out of the proceeds of sale of certain land by the executors, which sale he was to approve. He did approve the sale and prepare a deed for the property, and also wrote a receipt for commissions, to be signed by the person who effected the sale; and on the same day he wrote the receipt for the legacy for Catharine to sign. There should not have been any confusion in his mind, for there was no other $5,000 legacy bequeathed to Catharine.

Is not the fact that Mr. Pennington wrote the receipt for the legatee to sign so inconsistent with his testimony as to what she had said to him about the legacy, as to conclusively demonstrate that his memory cannot be relied upon? If the conversation with Catharine had, for the moment while writing the receipt, escaped his memory, would it not have occurred to him in time to have the money refunded to the executor? Although he must have seen the executor and legatee almost every day, there was no mention of the conversation with Catharine until some three years afterward, when he was examined as a witness.

To justify Mr. Pennington in writing the receipt upon which Catharine was paid her legacy by the executor, it is not sufficient to say that he did not wish to take part in any dispute about the matter, nor be counsel for either party.

There is no evidence that at the time the receipt was drawn there was any controversy about the legacy, nor did the difficulty concerning its payment arise until Mr. Van Houten presented his account for settlement. It was Mr. Pennington's duty to take part, if he had knowledge of a fact or declaration of the legatee which, if proved, would adeem the legacy. It cannot be supposed that so just a man as Aaron S. Pennington was known to be, would have remained silent and suffered Catharine to be paid $5,000 which he knew she had acknowledged she had already received. Much less would he aid such payment by drawing a receipt for the money, for her to sign.

There is evidence that when John R. Van Houten desired to have his executor's account prepared for settlement with the

orphans court, he took the papers, including the $5,000 receipt, to Mr. Pennington for that purpose, and that the account claiming allowance for payment of the legacy to Catharine was prepared in his office.

From the foregoing, it is evident that Mr. Pennington had entirely forgotten what Catharine had said on the occasion spoken of by him, and he says he never spoke to her again on the subject.

If the testimony closed here, it is clear that there is not sufficient proof to justify the court in holding that the legacy was adeemed. But there is evidence on the part of the appellant. Catharine Van Houten denies positively that she ever told Mr. Pennington what he says he thinks she did, or that she ever told any one that her mother had given her any money in satisfaction of the legacy. Both Mr. and Mrs. Van Houten swear that she (Catharine) never had the $5,000, nor any part thereof, in payment on the legacy. They say that prior to the construction of the house referred to in the evidence, or about that time, the testatrix, while yet sane, made her daughter presents of a few small sums, amounting in all to about $300, to aid in the building, undertaken at the testatrix's request, and, in fact, in part for her accommodation, and toward which she had promised to contribute.

This version of the transaction is sustained by the evidence of Adrian Post, a favorite grandchild, who resided with her, and knew more about her motives while she was in possession of her mental faculties than any other witness. He says his grandmother never told him she had furnished a cent toward the house, but said she would help along a little towards it, for the house she lived in was not large enough for her own family.

Mr. Van Houten says in his testimony that he built the house with his own money, except about $800, which he received from his wife, $300 of which he says her mother presented to her at different times. He states how he obtained the money to build the house, and produces a copy of records of deeds of lands sold by him prior to the commencement of the work, showing consideration-money expressed as received, greater in amount than

the cost of the house. There is also evidence to show that at that time John R. Van Houten was abundantly able to pay for such a house from his own funds.

If Catharine received $5,000 from her mother during her life, and after the execution of the will, in what sums was it handed to her? Was all given her at once, or at different times, and if so, how much at a time? To answer these important questions no evidence is produced. Is it not strange that if so large a sum as $5,000 was given by the testatrix to her daughter, no one saw it done? It must be remembered that even before she became insane, the testatrix was not capable of transacting such business without assistance.

Mr. Pennington or Mr. Van Houten had attended to her financial affairs for several years before she lost her mind. The money could not well have been disbursed by her to Catharine without the knowledge of one or both of them. Both were witnesses in this cause, but neither testifies that he ever saw any money pass from the testatrix to her daughter.

Again, where did the testatrix get the money to give to her daughter? There is nothing to show the receipt by testatrix of any considerable sum of money at the time of the building of the house, or within a reasonable time previous thereto. Several years before that event she had received $1,700 or $2,400 for a mortgage, but as her money when it came in was re-invested either by Mr. Van Houten or Mr. Pennington, it is not, in the absence of evidence, to be presumed that the testatrix had that money by her at the time of the building of the house. If not given to George Post, of which there is some evidence, or used in support of the family she had around her, some of whom were continually clamoring for money, it was doubtless re-invested.

Could the testatrix, in her condition and with her surroundings, have received a sum so large as to satisfy the legacy in question, without some evidence of the fact? Does not the testimony prove that for several years before her actual insanity, she was not able to transact such business alone? When, from whom and in what sums did she receive the money? Did she give any receipt or writing of acknowledgment, or cancel any

23

mortgage of large amount? Or is there any parol testimony of the particulars of any such transaction? No such evidence is produced. The testimony in the cause does not sustain the allegation that the legacy was adeemed.

The claim of the appellant for the payment of $5,000 to his wife for her legacy should have been allowed him in his account before the orphans court. The decree of the ordinary affirming the decree of the orphans court is reversed.

The appellant also appeals from that part of the decree of the prerogative court which directs the costs of the appeal to be paid out of his own funds. This part of the decree should also be reversed. While it is true that the mass of the testimony has no relevancy to the issue in the cause, and while the effort appears to have been made to reveal the family history from its beginning, in its most hideous and repulsive form, rather than to elucidate the question before the court, yet it cannot be perceived that one party was less eager to prolong such a disgraceful contest than the other, and as the litigants seem to have equally enjoyed this character of litigation for more than thirteen years, each party should pay his own costs in the appeal before the prerogative court, and also in this court, out of his own funds.

*Decree unanimously reversed.*